UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD PRENATT**,  Case No. 1:10 CV 1778

    Plaintiff,  Judge Christopher A. Boyko

    v.  REPORT AND RECOMMENDATION

**COMMISSIONER OF
    SOCIAL SECURITY,**

    Defendant.  Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Richard Prenatt seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## Procedural Background

Plaintiff filed an application for SSI and DIB on February 14, 2005, alleging disability as of January 20, 2005. (Tr. 62-64). Plaintiff's claim was denied initially and on reconsideration. (Tr. 34-35, 51-52, 54-56). Plaintiff thereafter sought a hearing. (Tr. 50). An ALJ held a hearing on February 11, 2008, at which Plaintiff appeared with his attorney and testified. (Tr. 394-435). Carol Mosley, a vocational expert (VE), also testified at the hearing.

In a written decision dated February 28, 2009, the ALJ awarded Plaintiff disability benefits as of September 5, 2007, but denied Plaintiff's disability claim prior to that date. (Tr. 21-30). The ALJ found Plaintiff had severe impairments of "degenerative disc disease of the cervical spine, status post cervical fusion surgery and degenerative disc disease of the lumbar spine as of September 5, 2007, the later onset date[.]" (Tr. 23). The ALJ found that before September 5, 2007, Plaintiff

> had the residual functional capacity [(RFC)]to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, [Plaintiff] could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for 6 hours each in an 8-hour workday; he could not climb ladders, ropes or scaffolds, but could occasionally crouch and crawl.

(Tr. 24). The ALJ then concluded, based on testimony by the VE, that – for the time period of January 20, 2005 to September 5, 2007 – there were a significant number of jobs in the national economy that Plaintiff could have performed. (Tr. 29-30).

The ALJ's decision became the final decision of the Commissioner following the Appeals Council's denial of review on June 21, 2010 (Tr. 6-10). *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed the instant case seeking judicial review of the ALJ's decision on August 12, 2010. (Doc. 1).

**Factual Background**

Plaintiff was 48 at the time of his alleged disability onset date, and 51 at the time of the hearing. (Tr. 62). He has a high school education and took some college courses. (Tr. 103). Plaintiff had past work experience as a furniture mover, truck driver, house parent at a children's treatment center, and construction worker. (Tr. 98, 404-09).

*Medical Evidence*

In September 2004, Plaintiff saw Dr. David Kosnosky with symptoms of right cervical radiculopathy. (Tr. 109). Dr. Kosnosky found a normal range of motion in Plaintiff's neck. In October 2004, Plaintiff saw Dr. Timothy Morely. (Tr. 107). He reported having hit a bump in the road in his job as a truck driver and "wrenched [his] neck." Plaintiff reported being treated with anti-inflammatory medications, but had continued neck and right shoulder pain. Dr. Morley diagnosed aggravation of preexisting degenerative disc disease at C5-6, aggravation of cervical spondylosis, aggravation of right shoulder sprain or strain, and cervical sprain or strain. (*Id.*).

In December 2004, Plaintiff reported neck, shoulder, and low-back pain after a car accident. (Tr. 108). X-rays showed cervical disc degeneration and no lumbar abnormalities. (Tr. 131). At a follow-up appointment in January 2005, Dr. Kosnosky examined Plaintiff, who reported pain and stiffness, pain in both shoulders, and that his right arm falls asleep. (*Id.*). Dr. Kosnosky found "diffuse paraspinous spasm and tenderness" in Plaintiff's neck with "fair" range of motion. He found Plaintiff had diminished range of motion in lumbar flexion and side bending to the right. Dr. Kosnosky diagnosed acute cervical and lumbar strain, prescribed medication, and referred Plaintiff to Dr. Howard Lee. (*Id.*).

Later in January 2005, Plaintiff had lumbar and cervical MRIs at the request of Dr. Lee. (Tr. 165-72). The lumbar spine MRI showed no disc herniation or spinal canal stenosis, but narrowing of the neural foramina at the L2-3, L3-4, L4-5, and L5-S1 levels with possible impingement on nerve roots. (Tr. 165). The cervical spine MRI showed disc herniation at the C6-7 and C5-6 levels with impingement on the cervical cord and narrowing of the neural foramina at multiple levels with

possible nerve root impingement. (167-68). Dr. Lee gave Plaintiff an injection of Dexamethasone and Lidocaine for pain relief. (Tr. 162).

Plaintiff had four physical therapy appointments from January 19 to 27, 2005. (Tr. 163-64). Notes indicate Plaintiff tolerated the therapy well. (*Id.*). Plaintiff had additional physical therapy from January 28 to February 7, 2005. (Tr. 112-120). The therapist noted "severe motion deficits of the cervical spine in an arthritic (capsular) pattern." (Tr. 112). Plaintiff reported no changes, and on February 4, 2005, the therapist reported to Dr. Lee that Plaintiff's condition "has not changed significantly" and Plaintiff "came in today stating that he has chosen the surgical option." (Tr. 120).

On February 2, 2005, Plaintiff saw neurosurgeon Abdul Itani for chronic neck pain with right arm pain. (Tr. 135). Dr. Itani told Plaintiff if his neck continues to bother him, "he is going to need partial corpectomy and fusion at C5, 6 and C6, 7." (*Id.*). Dr. Itani performed this procedure on February 21, 2005. (Tr. 121-27).

On April 2, 2005, Dr. Itani noted Plaintiff's right arm numbness had disappeared, but that "he continues to complain of muscle tightness in his neck and the medial aspect of his right scapula." (Tr. 145). Dr. Itani also noted "neck movements are full in all directions." (*Id.*). Dr. Itani recommended physical therapy and for Plaintiff to "give himself time." (Tr. 145).

Beginning in April, 2005, Plaintiff had 22 physical therapy treatments, but had "no significant change in symptoms" by June 2005. (Tr. 156).

On May 26, 2005, Dr. Elizabeth Das, a state agency physician, reviewed Plaintiff's medical records and assessed his RFC. (Tr. 146-53). Dr. Das concluded Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand, walk, or sit about six hours in

an eight-hour workday. (Tr. 147). She stated Plaintiff could only occasionally crouch or crawl, and could never use ladders, ropes, or scaffolds. (Tr. 148).

In August 2005, Plaintiff saw Dr. Morley for continued neck and low back pain. (Tr. 174). Dr. Morley found reduced range of motion in the cervical spine and spasm and midline guarding in the lumbar area. Dr. Morley concluded Plaintiff was "unable to work." (*Id.*). In September 2005, Plaintiff returned to Dr. Morley, who found reduced range of motion in the cervical spine, and spasm and discomfort in the lumbar area. (Tr. 175). Dr. Morley also found that Plaintiff's straight leg raise was negative bilaterally. (*Id.*).

In September 2005, Dr. Kamala Saxena, another state agency physician, reviewed Plaintiff's updated medical records and affirmed Dr. Das' assessment. (Tr. 153).

In October 2005, Plaintiff saw Dr. Dean Pahr at the Lake Hospital pain clinic. (Tr. 279, 284). Dr. Pahr found no sensory or motor changes in Plaintiff's arms, no radicular pains into his legs, and no back pain on palpitation. (Tr. 279). Plaintiff returned in November 2005 and reported his pain was seven out of ten. (Tr. 280). Dr. Pahr assessed multiple joint pains, shoulder joint pain, carpal tunnel syndrome, mild, and fibromyalgia, and changed Plaintiff's pain medications. (*Id.*).

Plaintiff returned to Dr. Morley in December 2005, "continuing to have quite a bit of neck pain." (Tr. 187). Dr. Morley changed Plaintiff's prescriptions – prescribing Lyrica – noting that multiple tricyclic antidepressants hadn't helped. (*Id.*). Plaintiff again returned in January 2005 with continuing neck pain, but reported "the radicular symptoms have decreased since starting the Lyrica." (*Id.*). Dr. Morley noted guarding and a decreased range of motion in the cervical spine. (*Id.*). In February and April 2006, Plaintiff reported continuing neck pain but that the Lyrica helped.

5

(Tr. 188). In February, Dr. Morley noted Lyrica "enables [Plaintiff] to function." In April, he reported aqua therapy was helping. (Tr. 188).

In June 2006, Plaintiff completed a patient health history questionnaire during a physical therapy assessment for treating plantar fasciitis. (Tr. 214-15). He reported he was taking Valium, Lyrica, and ibuprofen. (Tr. 214). He also reported that he drives, lives in a two-story home with sixteen stairs at the entrance, and his bedroom is on the second floor. (Tr. 215). He said he now needed help with household activities. (*Id.*).

On September 2, 2006, Dr. Kosnosky submitted a physical capacity form. (Tr. 236-37). Dr. Kosnosky stated Plaintiff could lift or carry five pounds, and stand, walk, or sit for a total of two hours in a workday (but one hour without interruption). (Tr. 236). Dr. Kosnosky indicated Plaintiff would need to rest for some period of time in a normal workday, can barely or never climb, stoop, crouch, kneel or crawl, and only occasionally balance. (Tr. 237). Dr. Kosnosky indicated Plaintiff could not push or pull, could occasionally reach, handle, feel, or perform fine manipulation, and could frequently perform gross manipulation. Dr. Kosnosky stated Plaintiff experiences severe pain, and would need a sit/stand option. Although Dr. Kosnosky indicated in multiple places on the form that the medical findings supporting his assessment were an "exam of 8/17/06", he did not attach any notes or findings from such an examination. (Tr. 236-37).

In September 2006, Plaintiff returned to see Dr. Pahr at the pain clinic for the first time since November 2005. (Tr. 274). Dr. Pahr assessed lumbar radiculitis and suggested Plaintiff get a back MRI to distinguish between his back pain and foot pain. Dr. Pahr also "urged [Plaintiff] to continue some stress management" and a "[p]sychology type evaluation as he continues to be very symptom oriented." (*Id.*).

A lumbar spine MRI performed in September 2006 showed no disc bulge, spinal canal stenosis, or neural foraminal narrowing. (Tr. 276-77).

Plaintiff returned to Dr. Pahr in October 2006, who noted: "[w]ith a normal MRI, I really cannot offer him any interventional treatments at this time." (Tr. 278).

From January to October 2007, Plaintiff saw psychiatrist Dr. Diane Eden. (Tr. 311-15). Dr. Eden noted poor sleep, racing thoughts, and disorganization. (Tr. 311).

In April 2007, Plaintiff had MRI scans of his head, lumbar spine, and cervical spine. His brain MRI was normal. (Tr. 283). The lumbar spine MRI was negative, without evidence of significant canal stenosis or focal disc protrusion. (Tr. 281-82). The cervical spine MRI showed satisfactory appearance of the spine after anterior fusion, and normal cervical cord and unremarkable paraspinal soft tissues were noted. (Tr. 282).

In May 2007, Plaintiff returned to see Dr. Pahr after a six-month lapse. (Tr. 286). Dr. Pahr noted Plaintiff's recent normal head and cervical spine MRIs. Dr. Pahr offered osteopathic manipulative treatment and suggested Plaintiff follow up in a few weeks. (*Id.*). Also in May 2007, Plaintiff met with Dr. D.K. Lee at Physician's Plus Neck and Back Pain Center. (Tr. 318-19). Plaintiff reported his pain was eight out of ten. (Tr. 318). Dr. Lee's examination found tenderness at C2 to C7 with palpation, and restricted range of motion. (Tr. 318-19). He also found tenderness with decreased range of motion in Plaintiff's lumbar spine. (Tr. 319). Dr. Lee recommended an x-ray of the cervical and lumbar spine, and therapy consisting of "electrical stimulation, ultrasound therapy and adjustment at two times per week." (*Id.*).

In September 2007, Plaintiff went to see Dr. Kosnosky for his annual physical. (Tr. 346-47). He reported chronic neck pain, and chronic back pain with recent exacerbation. Dr. Kosnosky noted

7

a "general decline in [Plaintiff's] sense of well-being." (Tr. 347). He noted Plaintiff "gets some relief from Lyrica, but only partial" and "gets some relief from Valium, which helps with the tight sensation." (Tr. 347). On examination, Dr. Kosnosky found no point tenderness and "[r]easonably good range of motion" in Plaintiff's neck. (Tr. 346). He noted Plaintiff's "low back pain with right leg pain compatible with sciatica . . . seems to have worsened in the past three months." (*Id.*). Plaintiff had "[q]uestionable straight leg raising positivity on the right."  Dr. Kosnosky recommended Plaintiff see other doctors to evaluate if he has "fibromyalgia or some other neurologic disease" and "to see if he is having some peculiar autoimmune response to his previous illness." (*Id.*).

On October 2, 2007, Plaintiff went to the office of Dr. David R. Mandel, a rheumatologist. (Tr. 325-26).[1] Katy Eichas, P.A.-C's impression was that Plaintiff had "chronic pain syndrome starting after his C-spine fusion two years ago" and that "[i]t has caused significant disability for" him. (Tr. 326). Ms. Eischas recommended physical therapy, psychological counseling, and biofeedback instruction. (*Id.*).

On October 24, 2007, an MRI of Plaintiff's lumbar spine showed a large herniated disc at L4-5. (Tr. 309). In January 2008, Dr. Benedict Columbi, a neurologist, recommended lumbar back surgery to correct the herniated disc. (Tr. 382).

*Testimony*

Plaintiff testified about his previous work. (Tr. 401-09).  He testified that his disability is a result of hitting a hole when he was driving a truck. His head snapped back and hit the back of the

---

[1] The signature on the letter from Dr. Mandel's office is actually Katy Eichas, P.A.-C, rather than Dr. Mandel himself.

8

seat. (Tr. 410). Plaintiff testified that after the February 2005 neck surgery, his right hand stopped going numb, but that the problem has since returned. (Tr. 413).

Plaintiff testified that his neck hurts all the time, and that it never stopped hurting after the surgery. (Tr. 414-15). He also said he has tension and a stabbing feeling in his left and right shoulder blades. (Tr. 415). He testified his lower back hurts if he picks something up, and it started to get worse in October 2007. (Tr. 416-17).

Plaintiff testified that after the surgery, everything got worse, and he was no longer able to play with his kids, or run like he used to. (Tr. 418). He also testified that he would be having low back surgery the following week. (Tr. 420). Plaintiff explained the various medications he had been on and whether or not they were effective. (Tr. 421-25).

Plaintiff testified he is sometimes able to drive to his doctor's appointments, but sometimes he cannot because he gets dizzy. (Tr. 426). He occasionally goes to the grocery store, does dishes and makes his bed, but relies on his wife for many household chores. (Tr. 426-27).

Carol Mosley, the VE, testified that an individual with the ALJ's given RFC (light work with some restrictions) would be able to perform jobs in the national economy. (Tr. 430-31). The ALJ also noted that if he concluded Plaintiff was only capable of sedentary work, Plaintiff would be disabled by virtue of the Grids. (Tr. 432). Ms. Mosley also testified that adding a sit/stand option would essentially turn the RFC into a sedentary RFC. (Tr. 433-34).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

   5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff asserts two related errors with the ALJ's decision: 1) the ALJ failed to properly evaluate his complaints of pain; and 2) the ALJ violated the treating physician rule. Defendant contends the ALJ did not err and his decision is supported by substantial evidence.

*Evaluation of Pain*

Plaintiff contends the ALJ failed to properly evaluate his chronic neck pain. Defendant contends the ALJ did not err, and his credibility finding is supported by substantial evidence.

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding her pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: 1) objective medical evidence of an underlying

11

medical condition; and 2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). The test "does not require . . . objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation omitted). The ALJ is to consider certain factors in determining whether a claimant has disabling pain: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; and 6) any measures used to relieve pain. 20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40.

It is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

The ALJ in this case cited the appropriate regulation – 20 C.F.R. § 404.1529 – and Social Security Rulings – SSRs 96-4p and 96-7p – in his RFC determination. (Tr. 24). He also listed the factors he must consider in assessing subjective symptom reports. (Tr. 25). The ALJ summarized

12

Plaintiff's testimony, including that about his pain, and concluded: "I find that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to September 5, 2007." (Tr. 25).

The ALJ's decision indicates he considered the factors required by 20 C.F.R. § 404.1529(c)(3). He discussed Plaintiff's daily activities and Plaintiff's testimony about the intensity of his symptoms.  (Tr. 25). He also specifically discussed Plaintiff's use of Lyrica and its lack of side effects. (Tr. 26).  Finally, the ALJ discussed other treatments Plaintiff had received, such as physical therapy. (*Id.*).

The ALJ pointed to inconsistencies in the record to support his conclusion that Plaintiff's subjective complaints were not fully credible. *See* SSR 96-7p, 1996 WL 374186,*5 ("One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record."). For example, the ALJ noted that despite describing severe pain to Dr. Morley in 2006, Plaintiff reported to a physical therapist (from whom he was seeking treatment for plantar fasciitis) around that same time that he drove a car, lived in a two-story home that had sixteen stairs at the entrance, and his bedroom was on the second floor. (Tr. 26, 215). The ability to drive and move up and down stairs indicates a greater level of functioning than Plaintiff reported to his doctors.  Plaintiff also testified he occasionally goes to the grocery store, does dishes, and makes the bed.

Additionally, the ALJ pointed to normal examination findings and doctors' notes indicating Plaintiff was not as compromised as he alleged. (Tr. 26-27).  For example, the ALJ pointed out that Dr. Itani indicated Plaintiff's neck movements "were full in all directions and there was no atrophy

13

or fasciculations in his upper extremities." (Tr. 26, 145). Additionally, Dr. Morley, although noting limited range of motion in Plaintiff's lumbar and cervical spine, noted Plaintiff's use of Lyrica helped him to function. (Tr. 26, 188). A lumbar spine MRI in September 2006 showed no disc bulge, spinal canal stenosis, or neural foraminal narrowing. (Tr. 276-77). The ALJ pointed to multiple records from Dr. Pahr, including one in October 2006 where Dr. Pahr indicated: "With a normal MRI, I really cannot offer him any interventional treatments at this time." (Tr. 27, 278). A lumbar spine MRI in April 2007 was negative, without evidence of significant canal stenosis or focal disc protrusion. (Tr. 281-82). Additionally, a cervical spine MRI showed satisfactory appearance of the spine after anterior fusion, and normal cervical cord and unremarkable paraspinal soft tissues. (Tr. 282). Dr. Pahr also noted in May 2007 that Plaintiff had not visited him for six months, and that a recent MRI of Plaintiff's head and cervical spine were normal. (Tr. 27, 286). The ALJ reasonably cited these examination findings and notes as a reason to conclude Plaintiff's pain was not as disabling as he alleged. Although Plaintiff is not required to show "objective evidence of the pain itself", *Duncan*, 801 F.2d at 853, *Felisky* requires Plaintiff to show that his "medical condition is of such severity that it can reasonably be expected to produce such disabling pain." *Felisky*, 35 F.3d at 1038. The ALJ reasonably concluded he had not, and for the reasons discussed above, the ALJ had substantial evidence to partially discount Plaintiff's credibility about his disabling pain.[2]

***Treating Physician Rule***

---

[2] In passing, Plaintiff argues the ALJ also erred in not finding chronic pain syndrome to be a severe impairment. (*See* Doc. 13, at 11). The conclusion that a particular impairment is not "severe", however, is irrelevant so long as all impairments – both severe and non-severe – are considered in determining Plaintiff's RFC. *See, e.g.*, *Anthony v. Astrue*, 266 F. App'z 451, 457 (6th Cir. 2008). As discussed above, the ALJ properly considered Plaintiff's allegations of chronic pain.

Plaintiff secondly contends the ALJ failed to give good reasons for discounting his treating physicians' opinions. Specifically, he argues the ALJ erred in discounting his treating physicians' opinions as based on Plaintiff's subjective complaints rather than objective anatomical defects. Defendant contends the ALJ's decision to discount Dr. Kosnosky's physical capacity questionnaire is supported by substantial evidence.

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. §§ 404.1527(d); 416.927(d). In determining how much weight to afford a particular opinion, an ALJ must consider: 1) examining relationship; 2) treatment relationship – length, frequency, nature and extent; 3) supportability; 4) consistency; and 5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* Social Security Ruling (SSR) 96-2p. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment§ and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable

15

presumption that it deserves "great deference" from the ALJ. *Id.* Importantly, the ALJ must give "good reasons" for the weight it gives a treating physician's opinion. *Id.*

Although Plaintiff lists numerous physicians in his argument, and refers generally to the ALJ's rejection of "his treating physicians", his main point of contention appears to be with the ALJ's rejection of Dr. Kosnosky's physical capacity assessment. *See* Doc. 13, at 14 ("The ALJ discounted the opinions of [Plaintiff's] treating and examining physicians stating that they are based on Plaintiff's complaints rather than evidence of anatomical defects."); (Tr. 27) (discounting Dr. Kosnosky's opinion because it was not based on objective evidence).

The ALJ explained that he did not rely on Dr. Kosnosky's assessment for several reasons: 1) "[h]is opinion was based on an examination dated August[] 17, 2006; however, the records from the exam are not contained in the record"; 2) Plaintiff had normal MRIs, no neurological deficits, and mostly normal nerve conduction studies; and 3) "Dr. Kosnosky's opinion that the claimant's [RFC] was less than sedentary was based on the claimant's statements and not evidenced by diagnostic imaging or pathological deficiencies." (Tr. 27). The ALJ's reasons for discounting Dr. Kosnosky's assessment are reasonable and supported by substantial evidence. Dr. Kosnosky's failure to attach the referenced examination notes meant the ALJ could not discern the basis for the restrictions Dr. Kosnosky imposed. Additionally, given his review of Plaintiff's numerous normal test results, the ALJ reasonably concluded the restrictions Dr. Kosnosky imposed were based more on Plaintiff's subjective complaints than on documented physical limitations. As discussed above, the ALJ had substantial evidence to partially discount Plaintiff's credibility, and therefore reasonably discounted Plaintiff's subjective symptom complaints. Thus, to the extent Dr.

Kosnosky's limitations were also based on those subjective complaints, the ALJ reasonably discounted them.

Because Dr. Kosnosky's opinion was not supported by "medically acceptable clinical and laboratory diagnostic techniques" and was inconsistent "with other substantial evidence in the case record", *Rogers*, 486 F.3d at 242, the ALJ reasonably discounted it. He thus satisfied the "good reasons" requirement.

In his brief, Plaintiff also refers generally to other treating physicians, summarizing his visits to Dr. Morley, Dr. Pahr, Dr. Eden, Ms. Eichas,[3] and physical therapists. Physical therapists noted Plaintiff had no improvement with treatment, Dr. Pahr and Dr. Eden documented continued complaints of pain, however, Plaintiff points to no specific findings of limitations that are inconsistent with the ALJ's RFC determination. As the ALJ pointed out, Dr. Pahr stated he could not offer Plaintiff "any interventional treatments" because Plaintiff had a normal MRI. (Tr. 27, 278). Ms. Eichas is not a treating physician, because the October 2007 record Plaintiff points to is Plaintiff's first visit with her. *See, e.g.*, *Atterberry v. Sec'y of Health & Human Servs*. 871 F.2d 567, 572 (physician who examined claimant only once was not a treating physician). The ALJ was therefore not required to give "good reasons" for discounting her opinion. With respect to Dr. Morley, the ALJ discussed Dr. Morley's findings, including Dr. Morley's notation that Plaintiff was "unable to work." (Tr. 26, 174). However, as outlined above, the ALJ went on to summarize inconsistencies between Plaintiff's subjective complaints of pain and the record evidence. Finally, in the conclusion of his RFC determination, the ALJ explained:

---

[3] Although Plaintiff refers to Dr. Mandel, again, the letter from Dr. Mandel's office is signed by Katy Eichas, P.A.-C. (Tr. 326).

17

> The claimant underwent spinal fusion; thus examination revealed limited range of motion. However, imaging was negative for further deterioration or defects of his spine. Thus, treatment was based on the claimant's statements of pain rather than evidence of anatomical defects supporting the severity of limitations alleged by the claimant.

(Tr. 28). The ALJ thus appropriately explained his decision to give less weight to Dr. Morley's and other treating physicians' opinions and that decision is supported by substantial evidence.

Although Plaintiff has pointed to evidence in support of his argument for disability, it is not this Court's role to re-weigh the evidence, and "[a] decision is supported by substantial evidence where a reasonable mind could find that the evidence is adequate to support the conclusion reached . . . even if the court might have arrived at a different conclusion." *Valley v. Comm'r of Sec. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005). That standard is met here.

## Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying SSI and DIB supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).